IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HAROLD BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. **3:13-cv-00091-PMF** |
| | ) |
| DOCTOR SHAH, | ) |
| CHRISTINE BROWN, | ) |
| NURSE MELVIN and | ) |
| NURSE LITTLE, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**FRAZIER, Magistrate Judge:**

Plaintiff Harold Brown is a former inmate with the Illinois Department of Corrections ("IDOC"). On May 3, 2011 Brown was involved in an altercation with his cellmate at the Pinckneyville Correctional Center ("Pinckneyville"). During the scuffle Brown fractured his left forearm. Despite repeated complaints of pain to Pinckneyville Health Care Unit ("HCU") staff members, Brown's broken arm went undiagnosed for over a month. On January 28, 2013 Harold Brown filed this lawsuit claiming that defendants Vipin Shah, M.D., Brandy Little, LPN, Henrietta Melvin, LPN and Health Care Unit Administrator Christine Brown were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Defendants Dr. Shah, Nurse Little and Nurse Melvin are employees of Wexford Health Sources, Inc., a contractor that provides medical services to IDOC. Defendant Brown is an IDOC employee. All four defendants now seek summary judgment (Docs. 60 and 62). The plaintiff filed a response in opposition (Doc. 73). For the following reasons, the Wexford defendants' Motion for Summary

1

Judgment (Doc. 60) is GRANTED for Nurse Little and DENIED for Dr. Shah and Nurse Melvin. Additionally, defendant Brown's Motion for Summary Judgment (Doc. 62) is DENIED.

## I.   BACKGROUND

When the court is presented with a motion for summary judgment "all facts are construed and all reasonable inferences are drawn in the light most favorable to the non-moving party." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014). Summary judgment shall then be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). With this standard in mind we turn to the facts of the case. On the evening of May 3, 2011 the plaintiff was in his cell at Pinckneyville when an argument developed between him and his cellmate. (Doc. 63-3, p. 3). Both individuals were located in one of Pinckneyville's special cells designed for physically disabled inmates. *Id.* The plaintiff remarked at his deposition that due to overcrowding, non-disabled individuals were being housed in these cells with disabled individuals such as himself. *Id.* As a result, the disabled inmates were being "bullied" by the nondisabled inmates. *Id.*

When the argument began the plaintiff was in a wheelchair and the cellmate was in the top bunk. *Id*. The cellmate came down from the top bunk and attacked the plaintiff. The two struck each other with their fists and wrestled on the floor of the cell. A correctional officer arrived shortly thereafter. The two inmates stopped fighting and the correctional officer left to request assistance. Additional correctional officers returned and the plaintiff's cell mate was lead out of the cell. The plaintiff was then escorted from his cell to the Pinckneyville HCU by prison Internal Affairs. *Id.*

At the HCU, Nurse Brandy Little examined the plaintiff. The plaintiff told Nurse Little that he was recently in a fight and that his shoulder and arms were swollen. Nurse Little briefly

examined the plaintiff. (Doc. 63-3, p. 3). She proceeded to give the plaintiff some ice and a package of Tylenol. The plaintiff told Nurse Little that he needed further treatment but she directed the correctional officers to escort him to the segregation unit. (Doc. 63-3, p. 3).

After examining the plaintiff, Nurse Little filled out an "Offender Injury Report." (Doc. 61-1, p. 1-2). The report states:

> S (Subjective Findings): "I hit my arms on the bed wresting [with] my cellie".
>
> O (Objective Findings): Medium seized knots noted to both forearms by elbows.
>
> …
>
> [no] other c/o voiced [at] this x.
>
> A (Evaluation of Injury): altercation
>
> P (Treatment and Follow Up): Tyl. #12 given [with] ice applied. F/U [with] NSC PRN.

The form is signed by Nurse Little and dated May 3, 2011. Additionally, at the bottom of the form there is a section designated "To Be Completed By Physician." This section of the form states "I have reviewed this report and would like to see this offender:" and the form goes on to include boxes where the physician can mark "immediately", "[at] next sick call", or "PRN". The "immediately" box is marked and next to the box is a handwritten note that states "seen 6/8/11 by NP". This section of the form is signed by Nurse Practitioner Rector and dated June 8, 2011. (Doc. 61-1, p. 2).

This was the only treatment the plaintiff received from Nurse Little concerning his left arm fracture. (Doc. 61-3, p. 4). Sometime within the week after the altercation the plaintiff submitted a request to be seen at nurse sick call (often abbreviated as "NSC") for additional treatment. On May 10, 2011 the plaintiff was examined by Nurse Melvin and Dr. Shah. (Doc. 61-1, p. 3-4). The plaintiff stated at his deposition that during the examination Nurse Melvin and

Dr. Shah asked about his legs. The plaintiff responded by telling the two that he needed treatment for his arm. The two then told him that he would have to submit a separate nurse sick call slip because they were only there to treat his legs. According to the affidavit of Dr. Shah, when an inmate at Pinckneyville is examined at nurse sick call the inmate will only be treated for a "particular condition." (Doc. 61-3, p. 1). When an inmate raises an additional issue at a medical examination, the medical professional will direct the prisoner to submit another sick call request. However, Dr. Shah stated in his affidavit that he will treat additional medical issues at an examination if it "appears that [the prisoner] requires urgent or emergent treatment." (Doc. 61-3, p. 1). There is no mention in the record of whether prisoner sick call slips are saved, and none of the plaintiff's nurse sick call slips appear to be in his medical file.

Despite the plaintiff's protests, Dr. Shah and Nurse Melvin focused on treating his leg at the May 10, 2015 examination. Dr. Shah prescribed the plaintiff Ultram and ordered that x-rays be taken of his leg. (Doc. 61-1, p.3). On May 12, 2011 the plaintiff underwent x-rays for his right leg. The radiologist noted "significant soft tissue swelling over the ankle joint but no acute bony fracture or dislocation…" (Doc. 61-1, p. 5).[1] Dr. Shah and Nurse Melvin examined the plaintiff for a follow up exam on May 24, 2011. Once again, the plaintiff attempted to discuss his arm problems but the two defendants limited the scope of the examination to his leg issues. (Doc. 61-1, p. 6; Doc. 63-3, p. 5-6). The plaintiff also stated at his deposition that during the period from May 3, 2011 to June 3, 2011 he sent several medical requests to Christine Brown, the Pinckneyville Health Care Unit Administrator ("HCUA") regarding treatment for his arm. (Doc.

---

[1] The plaintiff stated at his deposition that he did not recall undergoing the leg x-ray examinations. (Doc. 63-3, p. 4).

73-1, p. 1). A correctional officer also spoke to defendant Brown in regards to the arm issue on the plaintiff's behalf. *Id.*[2]

The plaintiff finally received medical attention for his arm on May 28, 2011. (Doc. 63-2, p. 5). On that morning Nurse Farris arrived to give the plaintiff his blood pressure medication. (Doc. 63-3, p. 6). The plaintiff refused to take his blood pressure medication as a form of protest because he was not receiving treatment for his arm. Nurse Farris observed the plaintiff's arm and he was later referred to see a physician. On June 7, 2011 the plaintiff's arm was examined by Dr. Shah. (Doc. 63-2, p. 7). Dr. Shah ordered an x-ray examination of the plaintiff's elbow. *Id.* The x-ray was taken on June 8, 2011. (Doc. 63-2, p. 8). Nurse Rector reviewed the x-ray and noted that there appeared to be a left "midshaft ulnar fracture." *Id.* She also noted that the plaintiff was "very upset [and] verbal about just finding out he has a fracture." *Id.* Nurse Rector then received approval from Wexford corporate to send the plaintiff to an orthopedic physician outside the prison. (Doc. 63-2, p.16). On June 16, 2011 the plaintiff was taken to see Dr. McIntosh, an orthopedic physician in Mount Vernon, Illinois. (Doc. 63-2, p. 18). Dr. McIntosh diagnosed the plaintiff as having a "nightstick fracture [in his] left upper extremity" and he arranged for the plaintiff to have a "long-arm cast" for next three weeks. *Id.* The plaintiff returned several more times over the next few months for follow up appointments with Dr. McIntosh. (Doc. 61-1, p. 12).

On January 28, 2013 the plaintiff filed this lawsuit. The four defendants now move for summary judgment. The defendants all argue that they were not deliberately indifferent to the plaintiff's medical needs. Defendant Brown also argues that she is entitled to qualified immunity.

---

[2] Christine Brown stated in her affidavit that during this period she did not recall receiving any request slips from the plaintiff nor did she recall a correctional officer speaking to her about the plaintiff's arm issue. (Doc. 63-1, p. 2).

## II.     ANALYSIS

Summary judgment will be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The facts and all reasonable inferences are drawn in favor of the nonmoving party. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012). Summary judgment is improper "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Eighth Amendment to the Constitution prohibits the infliction of cruel and unusual punishments on prisoners. U.S. Const. amend. XIII. An inmate's punishment "must not involve the unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976), and "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104, (1976).

In order to establish that a prison staffer's deliberate indifference to an inmate's medical needs violated the Eighth Amendment, the plaintiff must demonstrate subjective and objective elements of proof. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The objective component is satisfied by an "objectively serious medical condition." "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Moreover, "[a] medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

To satisfy the subjective component, the defendant must have demonstrated "deliberate indifference" to the plaintiff's condition. *Arnett*, 658 F.3d at 751. Deliberate indifference requires

a "sufficiently culpable state of mind." *Id*. This is a less demanding standard than purposeful, but it requires something more than ordinary medical malpractice negligence. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). "The point between these two poles lies where the official knows of and disregards an excessive risk to inmate health or safety or where the official is both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he ... draws the inference." *Id*. (internal cites and quotes omitted). However, a prisoner does not have to be completely ignored to have a valid Eighth Amendment claim. *Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011). A prisoner who receives some treatment can still establish deliberate indifference, so long as the treatment received is "blatantly inappropriate." *Id*. (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir.2005)). Moreover, "[a] delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).

    In the present case, the plaintiff's broken arm was clearly a serious medical condition. The plaintiff was transported from Pinckneyville to Mt. Vernon to be seen by Dr. McIntosh, an orthopedic specialist, on at least five separate occasions. Dr. McIntosh ordered that the plaintiff's arm be placed in a cast for three weeks. After the cast was removed, the plaintiff continued to wear an arm brace through late October, 2011. The defendants appear to sidestep the issue of whether the plaintiff's forearm fracture was a serious medical need, but any argument to the contrary would be completely without merit. The more difficult issue however is whether the defendants were deliberately indifferent to the plaintiff's condition. Each of the defendants will be addressed in turn.

### A. Nurse Little

Nurse Little's medical treatment of the plaintiff (for the period at issue) consisted of the brief examination immediately after the May 3, 2011 altercation. She was aware that the plaintiff was in a fight with his cellmate, she noticed that there were knots on the plaintiff's arms, and she gave him Tylenol and an ice pack. Although she underestimated the severity of the plaintiff's condition, neither she nor the plaintiff knew that the left forearm was fractured. It is very reasonable that two grown men engaged in fisticuffs would be very sore after such an altercation. At most, Nurse Little's failure to appreciate the severity of the plaintiff's injured arm amounts to an isolated instance of neglect. Generally, as in the present situation, isolated instances of neglect do not violate the Eighth Amendment. *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997). Thus, no reasonable jury could find that Nurse Little's conduct amounted to a violation of the plaintiff's Eighth Amendment rights. Any claim against Nurse Little would be more appropriate in a negligence action.

### B. Dr. Shah and Nurse Melvin

Summary judgment is inappropriate for Dr. Shah and Nurse Melvin. The plaintiff was treated by Dr. Shah and Nurse Melvin on May 10, 2011 and May 24, 2011. On both occasions the plaintiff pleaded with the two to provide medical assistance to his arm and they denied him treatment. Although the plaintiff's broken arm was eventually treated, "[a] significant delay in effective medical treatment … may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). While it is unlikely that the defendants knew that his arm was fractured on those two visits, the plaintiff repeatedly complained to the defendants that his arm was in pain. Even if the defendants suspected that the plaintiff was malingering, the plaintiff's contentions that he

suffered an injury to his arm were supported by the "Offender Injury Report" included in his medical file. It is well established that defendants cannot avoid deliberate indifference liability by turning "a blind eye" to the plaintiff's complaints. *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996).

Furthermore, the treatment provided by Dr. Shah and Nurse Melvin can easily be distinguished from the care provided by Nurse Little. Nurse Little examined the plaintiff immediately after he was in the altercation with his cellmate. Although the plaintiff was in pain, neither the plaintiff nor Nurse Little were aware of the severity of the plaintiff's condition. However when the plaintiff notified Dr. Shah and Nurse Melvin that his arm was still in immense pain one week after the altercation occurred, the two defendants were put on notice that his condition was much more serious than previously thought. These two defendants then ignored the plaintiff's complaints of arm pain on May 10, 2011 and May 24, 2011. The plaintiff did not have a cast placed on his arm until June 16, 2011. Under these circumstances, a reasonable jury could find that Dr. Shah and Nurse Melvin were deliberately indifferent to his medical condition.

### C.  Health Care Unit Administrator Brown

Defendant Brown also seeks summary judgment. The plaintiff sent several requests to HCUA Brown seeking medical treatment for his arm. A correctional officer also spoke to HCUA Brown on his behalf. HCUA Brown states in her affidavit that she has been the Health Care Unit Administrator at Pinckneyville since 2010 and her responsibilities include "ensuring that the inmate population has access to health care services that are commensurate with the services offered in the free community." (Doc. 63-1, p. 1). HCUA Brown argues that she is entitled to summary judgment the plaintiff's theory of liability rests primarily on *respondeat superior*,

which is inapplicable in a 42 U.S.C. § 1983 proceeding. To the extent the plaintiff is claiming that HCUA Brown was personally involved in his treatment, she asserts that she was not deliberately indifferent.

HCUA Brown is correct in that "§ 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). The plaintiff is therefore precluded from asserting Eighth Amendment liability against HCUA Brown under a theory of *respondeat superior*. It is true that HCUA Brown did not personally provide medical care to the plaintiff, nor does she provide medical care to any of the Pinckneyville prisoners. However she does acknowledge that she is responsible for ensuring that medical treatment is available to inmates at Pinckneyville. Moreover, the plaintiff sent multiple requests to HCUA Brown seeking treatment for his arm. A correctional officer also spoke to HCUA Brown on the plaintiff's behalf to seek treatment. With these facts, a reasonable jury could conclude that HCUA Brown turned a blind eye to the plaintiff's complaints and was therefore deliberately indifferent to the plaintiff's condition.

HCUA Brown also argues that she is entitled to qualified immunity. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine provides "immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "In evaluating whether a state actor is entitled to summary judgment for qualified immunity, we consider (1) whether the facts, taken in the light most favorable to the plaintiff, show that the

defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Locke v. Haessig*, 788 F.3d 662, 666-67 (7th Cir. 2015). The two prongs may be addressed in either order. *Id.*

Almost 40 years ago the Supreme Court held that the "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104, (1976). The Court went on to state;

> This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Id.* at 104-105 (footnotes omitted). When the facts are viewed in a light most favorable to the plaintiff, a reasonable jury could find that HCUA Brown denied and, or delayed treatment for the plaintiff's fractured arm. Furthermore, it has been clearly established for many years that deliberate indifference to a prisoner's serious medical needs runs afoul of the Eighth Amendment. HCUA Brown's qualified immunity argument therefore fails.

### III. CONCLUSION

For the foregoing reasons, Defendant Brown's Motion for Summary Judgment (Doc. 62) is DENIED. The Wexford defendants' Motion for Summary Judgment (Doc. 60) is GRANTED for defendant Nurse Little and DENIED for defendants Dr. Shah, Nurse Melvin. The Clerk of Court shall enter judgment for Nurse Little at the end of this case.

**IT IS SO ORDERED.**

**DATED:   August 5, 2015 .**

*s/Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**